

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

Nos. 04-13-00384-CR &
04-13-00387-CR

Ruben **RAMIREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2012CR6134 & 2012CR6135
Honorable Mary D. Roman, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: March 12, 2014

AFFIRMED AS MODIFIED

A jury convicted appellant Ruben Ramirez of two counts of possession of a controlled substance with intent to deliver. Based on the jury's recommendation, the trial court sentenced Ramirez to sixty years confinement in the Texas Department of Criminal Justice—Institutional Division and assessed a $5,000.00 fine. On appeal, Ramirez raises two issues, contending: (1) the trial court erred by denying Ramirez's motion to suppress, and (2) the evidence is legally insufficient to support the trial court's order assessing attorney's fees. We affirm the trial court's judgment as modified.

**BACKGROUND**

San Antonio Police Department Detective James Whitney was conducting narcotics surveillance at a San Antonio intersection based on information that narcotics were being sold in the area. Detective Whitney was in plain clothes and surveilling the intersection from an unmarked police vehicle. During the surveillance, the detective saw a man wearing a distinctive "TapouT" t-shirt. To the detective, it appeared the man was selling illegal drugs near the back of a convenience store at the intersection. The man was later identified as Ramirez.

Detective Whitney initially watched Ramirez walk out of sight to a grassy area behind the convenience store and return with a plastic sandwich bag to conduct a suspected narcotics transaction. To get a better view, Detective Whitney drove around the corner and parked in an area that allowed him to see what Ramirez was doing behind the convenience store. Once repositioned, Detective Whitney saw two more apparent drug transactions in which Ramirez received money in exchange for small baggies from the plastic sandwich bag retrieved from an area of tall grass next to the convenience store. Detective Whitney then contacted a uniformed officer, who was waiting out of sight in a marked police car, and asked him to arrest Ramirez.

After the arrest, Detective Whitney, without a search warrant, retrieved the plastic sandwich bag from the high grass area next to the convenience store. Inside the plastic sandwich bag were smaller, color-coded, zip-locked baggies that the detective believed contained narcotics. A forensic scientist with the Bexar County Crime Lab later confirmed the drugs in the smaller baggies were cocaine and heroin, individually packaged, in amounts totaling over one gram in weight per respective drug.

Ramirez was subsequently charged in two separate cases, which were tried simultaneously, with simple possession of cocaine and heroin, and possession with intent to deliver each drug. A jury found Ramirez guilty of possessing both cocaine and heroin with intent to deliver. The jury

recommended sentences of sixty years in each case and fines totaling $5,000.00. The trial court sentenced Ramirez accordingly,[1] and also ordered Ramirez, who had been appointed trial counsel due to indigency, to pay attorney's fees in an amount "TBD" (To Be Determined). Ramirez subsequently perfected this appeal.

## ANALYSIS

Ramirez raises two issues on appeal, contending: (1) the trial court erred by denying his motion to suppress, and (2) the evidence is legally insufficient to support the trial court's assessment of attorney's fees.

### *Motion to Suppress*

Ramirez first contends the trial court erred by denying his motion to suppress the sandwich bag of drugs collected by Detective Whitney because the warrantless seizure violated Ramirez's rights under the United States and Texas Constitutions. Specifically, Ramirez contends Detective Whitney's actions were an unreasonable search and seizure. The State contends Ramirez lacks standing to challenge the constitutionality of the warrantless seizure.[2]

Individuals are protected from unreasonable searches and seizures by the Fourth Amendment of the U.S. Constitution and Article 1, Section 9, of the Texas Constitution. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). An individual has standing to challenge the admission of evidence obtained by "unlawful" search or seizure only if he can demonstrate a legitimate expectation of privacy in the place invaded. *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 139 (1978)). A legitimate expectation of privacy is proven by establishing a subjective expectation of privacy in the place invaded and that society is prepared to recognize that expectation of privacy

---

[1] The trial court ordered Ramirez's separate sixty year sentences to run concurrently.

[2] The State is challenging Ramirez's standing for the first time on appeal, which it may do. *See State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996).

as objectively reasonable. *Betts*, 397 S.W.3d at 203. In determining whether a defendant has proven an objectively reasonable expectation of privacy, we review the totality of the circumstances surrounding the search, including the following non-exhaustive list of factors: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Id.* at 203–04. Additionally, although we defer to the trial court's findings of fact, we review the legal issue of standing *de novo*. *Id.* at 204.

Based on our review of the record, we hold Ramirez did not prove he had an objectively reasonable expectation of privacy in the tall grass behind the convenience store. There was no evidence Ramirez: (1) had any sort of possessory interest in the area; (2) was legitimately in the grassy area where the detective found the drugs; (3) controlled the grassy area and had a right to exclude others from it; (4) took normal precautions to secure his privacy; (5) put the place to some private use; or (6) had a claim of privacy consistent with our historical notions of privacy. *See id.* at 203–04. Nor did Ramirez produce any other sort of evidence that would suggest he had a reasonable expectation of privacy in the area from which the detective seized the contraband. We refuse to recognize a claim of privacy with regard to an open grassy area behind a convenience store as objectively reasonable. Although Ramirez was obviously using the grassy area as a storage space for his drugs, the record does not support any of the factors traditionally used to support an objectively reasonable expectation of privacy. *See id.* Accordingly, we hold Ramirez does not have standing to challenge the warrantless seizure of the narcotics because Ramirez did not have

a legitimate expectation of privacy in the grassy area from which the drugs were seized. Therefore, we overrule Ramirez's first issue.

### *Attorney's Fees*

Ramirez next contends the evidence is legally insufficient to support the imposition of any attorney's fees under Article 26.05(g) of the Texas Code of Criminal Procedure. The State counters that Ramirez's argument is not ripe for review because the exact dollar amount of attorney's fees assessed by the trial court was "TBD" in the bill of costs. We disagree with the State's contention that this issue is not ripe for our review.

Ramirez does not challenge the amount of fees assessed, which might not be ripe for our review; rather, he challenges the assessment of *any* attorney's fees because there is no evidence in the record to overcome the presumption he has remained indigent. That is, there is no evidence of a material change in his financial circumstances. *See Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013); TEX. CODE CRIM. PROC. art. 26.04(p). Accordingly, we hold Ramirez's evidentiary challenge is ripe for our review. *See* TEX. CODE CRIM. PROC. art. 26.04(p).

A trial court is allowed to assess attorney's fees against a defendant who had court-appointed counsel if it determines the defendant has financial resources enabling him to offset, in part or in whole, the costs of legal services provided. *See* TEX. CODE CRIM. PROC. art. 26.05(g). Under Article 26.05(g), "the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Cates*, 402 S.W.3d at 251 (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Article 26.05(g) requires a *present* factual determination of the defendant's financial resources without speculation about possible future resources. *See Cates*, 402 S.W.3d at 252 (emphasis added).

Here, the record reflects Ramirez filed a "Pauper's Oath," and the trial court appointed counsel to represent Ramirez at trial. Criminal defendants are not entitled to court-appointed counsel unless they are indigent. *See* TEX. CODE CRIM. PROC. art. 26.04. Once he was found indigent, Ramirez is presumed to have remained indigent for the remainder of the proceedings absent a factual determination of a material change in his financial circumstances. *See Cates*, 402 S.W.3d at 251; TEX. CODE CRIM. PROC. art. 26.04(p).

Our review of the record reveals there was never a finding by the trial court that Ramirez's financial circumstances changed and he was able to re-pay the costs of court-appointed counsel. Therefore, there are insufficient facts in the record to rebut Ramirez's presumed indigency and justify the assessment of any attorney's fees against him under Article 26.05(g). *See* TEX. CODE CRIM. PROC. art. 26.05(g). Accordingly, we sustain Ramirez's issue with regard to the imposition of attorney's fees and reform the trial court's judgment to delete the imposition of attorney's fees. *See Solomon v. State*, 392 S.W.3d 309, 311 (Tex. App.—San Antonio 2012, no pet.).

## CONCLUSION

Based on the foregoing, we affirm the judgment as modified, specifically modifying the trial court's judgment to eliminate the imposition of attorney's fees against Ramirez.

Marialyn Barnard, Justice

Publish