In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00073-CV**
_____

**IN RE ALLEN L. PANTALION AND JOSEPH P. ETHERIDGE D/B/A J&G TRUCKING D/B/A J&G LOGGING CONTRACTORS**

_____

**Original Proceeding**
**1st District Court of Jasper County, Texas**
**Trial Cause No. 35354**
_____

**OPINION**

In this original proceeding, relators Allen L. Pantalion and Joseph P. Etheridge d/b/a J&G Trucking d/b/a J&G Logging Contractors seek a writ of mandamus ordering the trial court to vacate its orders granting the motion for new trial filed by the plaintiff in the underlying case, real party in interest Carol Brasher. The jury found Brasher's sole negligence proximately caused the motor vehicle accident made the basis of the underlying lawsuit and found Pantalion not negligent. The trial court sustained Brasher's challenge to the sufficiency of the evidence for the jury's verdict without explanation, then amended the order after Relators filed

1

the mandamus petition. Relators argue that the trial court abused its discretion when it granted the motion for new trial despite there being factually and legally sufficient evidence to support the jury's verdict. We conditionally grant relief.

No court is free to simply substitute its judgment for that of the jury. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding). "To be facially valid, a new-trial order based on a factual-sufficiency review 'must indicate that the trial judge considered the specific facts and circumstances of the case at hand and explain how the evidence (or lack of evidence) undermines the jury's findings.'" *In re Bent*, 487 S.W.3d 170, 176 (Tex. 2016) (orig. proceeding) (quoting *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012)). "If the record does not support the trial court's rationale for ordering a new trial, the appellate court may grant mandamus relief." *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013) (orig. proceeding). "If, despite conformity with the procedural requirements of our precedent, a trial court's articulated reasons are not supported by the underlying record, the new trial order cannot stand." *Id*. at 758.

When the trial court grants a new trial because the jury's finding was against the great weight and preponderance of the evidence, we review the entire trial record to determine, using a factual sufficiency standard, whether the record supports the

trial court's reasoning. *In re E.I duPont de Nemours and Company*, 463 S.W.3d 80, 85 (Tex. App.—Beaumont 2015, orig. proceeding). The trial court abused its discretion in granting a new trial if the record does not support its stated reasons. *Id.* "The amount of evidence necessary to support the jury's verdict is far less than that necessary to warrant disregarding the jury's verdict." *In re Zimmer, Inc.*, 451 S.W.3d 893, 906 (Tex. App.—Dallas 2014, orig. proceeding). "Evidence is factually sufficient to support the jury's verdict if the evidence is such that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn therefrom." *Id*.

The evidence at trial relevant to the jury's findings on negligence included live testimony from Brasher and the investigating officer, and video deposition testimony from Pantalion. Pantalion testified that he first noticed Brasher in his rear-view mirror, at about the rear of his truck in the inside lane. She then passed him on the left. Pantalion claimed he was approximately 200 yards from the stop light when he saw the light change. Pantalion said he was driving the speed limit, which he believed was 35 miles per hour. According to Pantalion, Brasher moved into the right lane when "I was right on her[]" and stopped such a short distance in front of him that he could not react in time to stop his 83,000-pound loaded Mack truck. According to Pantalion, "It happened so fast, whenever she turned in front of me

3

there like that and then pulled there to the light to stop, that's when I hit her." He denied telling the officer that he had not been paying attention. Additionally, Pantalion denied Brasher's claim that she occupied the right-hand lane for most of a cycle of the red-light before the collision occurred.

Brasher testified before the jury that she was in the left-hand lane as she approached the intersection. She moved from the left lane to the right lane because she was going to make a right turn some distance past the intersection. Brasher claimed that she stopped in the right-hand lane at the intersection during the yellow caution light and remained there after the light turned red. Brasher did not notice Pantalion's vehicle until he struck her Tahoe. Brasher stated, "I wasn't paying attention to what was behind me because whenever I changed lanes, there was nothing behind me." Brasher stated a 50 miles-per-hour speed limit applied until the intersection. According to Brasher, neither vehicle left skid marks in the straight-on collision.

Officer James Stephen Hopson, who had previously worked as a truck driver, investigated the accident in his capacity as a Jasper police officer. In his opinion the accident occurred due to inattention by Pantalion. He based his opinion on the location of the vehicles and the impact damage to Brasher's vehicle. Brasher's vehicle stopped at the intersection, and Pantalion's log truck made a concentrated

4

hit where the front of his vehicle contacted the rear of her vehicle. Officer Hopson did not witness the accident. He agreed that he did not know how long Brasher had been in the outside lane and at the intersection when the accident occurred. Officer Hopson agreed that the concentrated hit on Brasher's vehicle could have occurred whether she had been there for one second or for two minutes. A photograph of the rear of Brasher's Tahoe showed damage across the rear and to the right side of the tailgate and rear bumper. According to Officer Hopson, the speed limit changes from 50 miles-per-hour to 40 miles-per-hour at the intersection.

The trial court's amended order sustained Brasher's challenge to the legal and factual sufficiency of the evidence for the jury's verdict. In the amended order, the trial court stated that it granted Brasher's motion for new trial because

> the finding of the jury was against the great weight of the evidence as the evidence supporting Defendant was so lacking as to make the result fundamentally unfair and manifestly unjust. Several witnesses testified and through this testimony it was evident that the defendant, Mr. Pantalion, was inattentive and his negligence was the proximate cause of the accident. Specifically, the testimony of Deputy James Hopson, a law enforcement officer and former truck driver, showed that the impact of the log truck on Plaintiff's vehicle was due to Defendant's inattention and corroborated Plaintiff's version of the event. The only evidence Defendant offered in support of his account of the collision was his own testimony that Plaintiff was in fact at fault. The evidence to support Defendant's bald assertions was so weak as to make the Jury's finding clearly wrong and manifestly unjust.
>
> Further, Defendant's testimony, measured against the testimony corroborating Plaintiff's account of the accident, created no more than

5

a mere surmise or suspicion, and could not prove the truth of this allegation. It was no more than a scintilla of evidence, and is not legally sufficient.

The new-trial order omits evidence the jury reasonably could have credited in support of its determination of negligence. Brasher testified that until the impact occurred, she was unaware of the presence of Pantalion's vehicle on the roadway. Therefore, her testimony could give rise to an inference that Pantalion was well behind her when she changed lanes and stopped, but she could provide no information concerning Pantalion's behavior before the accident. The primary distinction between Brasher's version and Pantalion's is Pantalion testified that he observed Brasher as she passed him on the left, and he suggested that she moved into his lane and stopped suddenly before he could stop his loaded eighteen-wheeler.

Officer Hopson corroborated Brasher's testimony regarding the speed limit where the accident occurred. There was, however, no evidence that Pantalion exceeded the posted speed limit. While Officer Hopson's report stated both drivers were travelling westbound, both drivers agreed they were travelling eastbound. Officer Hopson deduced from the location of and damage to the vehicles that Pantalion's log truck hit the back of Brasher's Tahoe squarely, which would be consistent with and supports both Pantalion's and Brasher's versions of the event. Officer Hopson could not determine how much time elapsed from the time Brasher

6

changed lanes until Pantalion hit the rear of her vehicle. Officer Hopson expressed to the jury his opinion that the fact that the impact was a concentrated hit indicated that Pantalion's inattention caused the accident, but if the jury believed Pantalion when he claimed that he observed Brasher change lanes and stop when she was too close to him for him to be able to stop, it could reasonably reject Officer Hopson's opinion that it was Pantalion's inattention that caused the accident. Furthermore, Pantalion's description of Brasher's lane change and stop provide specific facts from which a reasonable jury could decide that Brasher changed lanes in an unsafe manner and that her actions were the sole cause of the accident or that it was an unavoidable accident.[1]

The trial court ruled that Pantalion's testimony, measured against the testimony corroborating Brasher's testimony, "created no more than a mere surmise or suspicion, and could not prove the truth of this allegation." Generally, a claim that there is no evidence will be sustained when there is a complete absence of evidence of a vital fact, the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital

---

[1] *See generally* Tex. Transp. Code Ann. § 545.060(a) (West 2011) ("An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely.").

fact is no more than a mere scintilla, or the evidence conclusively established the opposite of a vital fact. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (discussing no-evidence motion for summary judgment).

The trial court's reasoning is not supported by the record. Although the trial court reasoned that Pantalion provided a bare assertion that Brasher was at fault, Pantalion explained for the jury how he could not avoid the accident and how Brasher caused the accident. Pantalion disputed Brasher's claim that she had been sitting at the stop light when the accident occurred. He stated that he started slowing down when the light changed as he approached the intersection. He claimed Brasher moved into his lane and suddenly stopped when he was right on her and, he could not stop before he struck her vehicle with his bumper. Brasher claimed no other vehicle was present when she changed lanes and that she sat through the yellow and for most of the light's red cycle before Pantalion hit her. Officer Hopson's testimony, which included an observation that the vehicles experienced a concentrated hit, neither conclusively established that Brasher's testimony was true nor that Pantalion's testimony was false. The trial court's discretion to grant a new trial does not permit the trial court to substitute its own views for that of the jury without a valid basis. *Columbia*, 290 S.W.3d at 212. By substituting its judgment regarding

8

the credibility of the witnesses for the jury's, the trial court abused its discretion. *See United Scaffolding*, 377 S.W.3d at 685.

The trial court's reason for granting Brasher's motion for a new trial is not supported by the record. Therefore, the trial court clearly abused its discretion by granting a new trial. *See Toyota Motor Sales*, 407 S.W.3d at 758. We conditionally grant mandamus relief. We are confident that the trial court will vacate its order granting a new trial and sign a judgment on the jury's verdict. The writ shall issue only in the event the trial court fails to do so.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on April 1, 2019
Opinion Delivered May 16, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

9